# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELIOT P. GOULD, CITIZENS COMMITTEE
FOR ELIOT GOULD, FIRST JUDICIAL ATTORNEY,

      Plaintiffs,

vs.                                                                                    No. CIV 08-0505 JB/DJS

GOVERNOR BILL RICHARDSON,
JOSEPH E. CAMPBELL,
MARY HERRERA (SECRETARY OF STATE),

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Mary Herrera's Motion to Dismiss,

filed June 13, 2008 (Doc. 15). Governor Bill Richardson adopted the Motion via Governor Bill

Richardson's Notice of Adoption by Reference of "Defendant Mary Herrera's Motion to Dismiss,"

filed August 1, 2008 (Doc. 24). The Court held a hearing on March 20, 2009. Plaintiff Eliot Gould

is representing himself pro se.[1] The primary arguments that Defendant Mary Herrera, the New

Mexico Secretary of State, raises in her motion to dismiss are that Gould's claim is moot and that

he does not possess the qualifications required to be District Attorney. Because Gould's Complaint,

liberally construed, requests that the Court decertify the 2008 District Attorney's election and order

a special election, Gould's claims are not moot. Fairly read, however, the motion to dismiss also

asserts that the Complaint fails to state a claim on which relief can be granted. Because the motion

---

[1] The Citizens Committee for Eliot Gould appears to be unrepresented in this action. No signature for the Citizen's Committee for Eliot Gould, First Judicial Attorney, appears on the Complaint. <u>See</u> Complaint of Election Franchise Violation Pursuant to U.S.C. 42 ss 1973 (Voting Rights), filed May 5, 2001 (Doc. 1). Accordingly, the Court will refer to the Plaintiff singularly herein.

is correct on this point, the Court will dismiss the Complaint on the merits.

### FACTUAL BACKGROUND

Gould is a United States citizen and a registered voter in the State of New Mexico.  On March 18, 2008, Gould filed with the Secretary of State a declaration of candidacy for the position of District Attorney, First Judicial District of New Mexico.  The declaration included nine-hundred-fifty signatures of individuals who supported Gould's candidacy.  At some point during Gould's preparation for candidacy, he organized a "Citizen's Committee for Eliot Gould, First Judicial District Attorney." Doc. 1-2 at 3.[2]  On March 25, 2008, Herrera issued a certificate stating that Gould was qualified to be on the ballots of the Democratic Party primary on June 4, 2008 for the position of District Attorney for the First Judicial District.  On March 28, 2008, Joseph E. Campbell, another candidate for the office of District Attorney, filed a petition with the First Judicial District Court challenging Gould's qualifications to be candidate for District Attorney because Gould was not a licensed attorney and, therefore, not "learned in the law" as the New Mexico Constitution requires.  See No. D-0101-CV-2008-00845.[3]  Gould is not licensed to practice law in any state, including New Mexico.[4]

---

[2] Within the documents attached to the Complaint, Gould states that the name of the committee he formed is "Citizen's Committee for Eliot Gould, First Judicial District Attorney."  The Complaint he filed captions the Plaintiffs as "Eliot P. Gould, Citizens Committee for Eliot Gould, First Judicial Attorney."

[3] On the same day, Gould and the Citizens Committee filed a petition challenging the candidacy of Mr. Campbell, alleging that the number of signatures provided by Mr. Campbell were insufficient and that there were some fraudulent signatures.  See Complaint ¶ 6, at 2.  After hearing some argument, the state District Court dismissed the case against Mr. Campbell.  See id. ¶ 11, at 9.

[4] Gould represents that he is not licensed in any state, but that he was at one time a member of the Illinois bar.  See Tr. at 45:17-19; 46:20-47:3 (Court & Gould).

On April 14, 2008, the Honorable Daniel Sanchez, District Judge of the First Judicial District Court for the State of New Mexico, held:

> IT IS ORDERED, that although Eliot Gould has legal training and is learned in the law, he is not currently a licensed attorney in the State of New Mexico or any other state and therefore is not qualified to hold the office of First Judicial District Attorney.
>
> IT IS ORDERED, that the Secretary of State, Mary Herrera shall remove the name of Eliot Gould from the official ballot of candidates for the office of First Judicial District Attorney forthwith.

On April 14, 2008, Gould filed a Petition for Mandamus with the Supreme Court of New Mexico stating that the state District Court erred in finding that he "was not qualified for lack of being a licensed attorney after finding that the candidate was 'learned in the law' and otherwise fulfilled the qualifications required." Complaint ¶ 12, at 9. On April 18, 2008, the Supreme Court of New Mexico denied the Petition for Mandamus. On April 21, 2008, Plaintiff filed a Motion for Reconsideration with the Supreme Court of New Mexico, which was denied on April 23, 2008.

Gould's name was removed from the ballot.

## PROCEDURAL BACKGROUND

On May 21, 2008, Gould filed his Complaint with this Court. He requests that the Court provide "Federal intervention" and "with purpose to seek a declaratory judgement certifying the propriety of the candidacy," and that the Court "dissolve and nullify the restrictions to the general election ( 'or special election in timely fashion') which may include candidate Eliot P. Gould and

others and other relief as may be just."[5]  Complaint at 12.  In Gould's Memorandum in Support, attached to the Complaint, <u>see</u> Complaint at 13, he asserts violations of his rights under the Voter Rights Act, 42 U.S.C. §§1973 and 1973(h), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

On June 13, 2008, Herrera filed her Motion to Dismiss.  <u>See</u> Doc. 15.  Richardson adopted Herrera's motion via his Notice of Adoption by Reference of "Defendant Mary Herrera's Motion to Dismiss," <u>see</u> Doc. 24.  Herrera contends that Gould's Complaint is moot and without legal foundation as Mr. Gould does not meet the qualifications required of the District Attorney.  On March 20, 2009, the Court held a hearing with regard to the pending motions.

## STANDARDS FOR DECIDING A MOTION TO DISMISS

Pursuant to rule 12(b) of the Federal Rules of Civil Procedures, a motion to dismiss can be granted for numerous reasons, including lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P 12(b)(1) and 12(b)(6).  Further, rule 12(h)(3) states that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Any party or the court, at any stage of the litigation, can raise the objection that a federal court lacks subject-matter jurisdiction. <u>See</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 506 (2000); Fed. R. Civ. P 12(b)(1), 12(h)(3).  The allegation that a claim is moot questions the courts' subject-matter jurisdiction over the claim.

Under rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." <u>Mitchell v. King</u>,

---

[5] Gould should have set forth all of his assertions in the body of the Complaint.  The Court nevertheless considered as part of his allegations the information included in the Memorandum in Support attached to the Complaint.

537 F.2d 385, 386 (10th Cir. 1976)(citing Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969)).  Pro se pleadings are interpreted liberally, see Swoboda v. Dubach, 992 F.2d 286, 289 (10th Cir. 1993), but must comply with the basic requirements of the Federal Rules of Civil Procedure.  See Yang v. Archuleta, 525 F.3d 925, 927 n. 1 (10th Cir. 2008)(citing Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994)).  Therefore, notwithstanding the liberal construction provided to pro se filings, the plaintiff is not relieved of the burden of alleging sufficient facts upon which to base a recognized legal claim.  See Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008)(citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

When ruling on a motion to dismiss, the court accepts all the factual allegations set forth in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  Documents attached to the complaint are considered within the pleadings, and the court may review them and consider them in deciding a motion to dismiss.  See Alexander v. Oklahoma, 382 F.3d 1206, 1214, n.2 (10th Cir. 2004).  It is not the court's role to weigh potential evidence that the parties might present a trial, but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which relief can be granted. See Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).  The court is not required to accept the conclusions of law or claimed application of law to the alleged facts.  See  Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994); Olpin v. Ideal National Insurance Co., 419 F.2d 1250, 1255 (10th Cir. 1969).  The court is also not required to accept legal conclusions that are presented as factual allegations as true. See Brooks v. Sauceda, 85 F.Supp.2d 1115, 1123 (D. Kan. 2000)(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual

allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted).  "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1967, 1969). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1974)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

## LAW REGARDING MOOTNESS

Article III, Section 2 of the United States Constitution limits the federal courts' jurisdiction to actual cases and controversies.  "Federal courts are without authority to decide questions that cannot affect the rights of litigants in the case before them." Ford v. Sully, 773 F. Supp. 1457, 1464 (D. Kan. 1991)(citing North Carolina v. Rice, 404 U.S. 244, 246 (1971); Johansen v. City of Bartlesville, Oklahoma, 862 F.2d 1423, 1426 (10th Cir. 1988); Johnson v. Riveland, 855 F. 2d 1477, 1480 (10th Cir. 1988)).  "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonians for

Official English v. Arizona, 520 U.S. 43, 67 (1997).  Accordingly, if a case is moot, or becomes

moot during any stage of the case, the court does not have jurisdiction to hear the case.  A case

becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable

interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)(citing Powell

v. McCormack, 395 U.S. 486, 496 (1969).

   The court should not be quick to dismiss a claim for lack of jurisdiction.  "Before deciding

that there is no jurisdiction, the district court must look at the way the complaint is drawn to see if

it is drawn so as to claim a right to recover under the Constitution and the laws of the United States."

Bell v. Hood, 327 U.S. 678, 682 (1946).  Jurisdiction is not dependent on whether the plaintiff will

succeed in his cause of action; jurisdiction is determined before the details of the cause of action,

both in law and fact, are considered.  See id.

## LAW REGARDING ELECTORAL FRANCHISE

   Our constitution does not contemplate that the federal judiciary routinely will
   pass judgment on particular elections for federal, state or local office. The conduct
   of elections is instead a matter committed primarily to the control of states, and
   legislative bodies are traditionally the final judges of their own membership.  The
   legitimacy of democratic politics would be compromised if the results of elections
   were regularly to be rehashed in federal court.

Hutchinson v. Miller, 797 F.2d 1279 (4th Cir. 1986).  There is no express provision in the federal

constitution which sets forth the procedures a state must use in filling state office vacancies.  See

Rodriguez v. Popular Democratic Party, 457 U.S. 1, 8 (1982).  "When a State exercises power

wholly within the domain of state interest, it is insulated from federal judicial review."  Gomillion

v. Lightfoot, 364 U.S. 339, 347 (1960).  States lose their insulation, however, when their actions

circumvent a federally protected right. See id.

## NEW MEXICO LAW REGARDING CANDIDATES FOR DISTRICT ATTORNEY

The New Mexico Constitution sets forth the qualifications required of a person seeking to be electoral candidates, including the District Attorney.

Article VII of the New Mexico State Constitution states: "Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office except as otherwise provided in this constitution." Article VI, Sec. 24 of the New Mexico Constitution states:

> There shall be a district attorney for each judicial district, who shall be learned in the law, and who shall be a resident of New Mexico for three years next prior to his election, shall be the law officer of the state and of the counties within his district, shall be elected for a term of four years, and shall perform such duties and receive such salary as prescribed by law.

The Supreme Court of New Mexico has held that "'learned in the law' and being a 'licensed attorney' are synonymous." Chavez v. Evans, 79 N.M. 578, 584, 446 P.2d 445, 451 (1968)(per curiam).

## VOTING RIGHTS ACT

Congress passed the Voting Rights Act of 1965, 42 U.S.C. §§ 1973 to 1973q, to provide more enforceability to the Fifteenth Amendment prohibition against racial discrimination in voting. See Morse v. Republican Party of Virginia, 517 U.S. 186, 193 (1996). Specifically, Congress created the Act to remedy the denial or abridgement of the right to vote on account of race or color or on account of being a member of a language minority. See 42 U.S.C. §§ 1973 and 1973b(f)(2). The rationale was that members of a class of citizens protected by § 1973 have less opportunity to participate in the political process and to elect representatives of their choice. The Act was passed to protect a minority class from having its power diluted. In determining whether the Act was violated, the court must consider not whether there was discrimination, but whether there was

potential for discrimination.  See Morse v. Republican Party of Virginia, 517 U.S. at 217.

## EQUAL PROTECTION CLAUSE

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from discriminating among different classes of persons arbitrarily.  Specifically, the Fourteenth Amendment to the U.S. Constitution states: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST., Amend XIV, § 1.  "[T]he [Supreme] Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others."  McGowan v. Maryland, 366 U.S. 420, 425 (1961) (edits as in original).  Accordingly, a state law is not presumed to be unconstitutional solely because it results in some inequality among groups of citizens.  See id. at 425-6 (citing Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552 (1947); Metropolitan Casualty Ins. Co. of New York v. Brownell, 294 U.S. 580 (1935); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61 (1911); Atchison, T. & S.F.R. Co. v. Matthews, 174 U.S. 96 (1899)); see also Clements v. Fashing, 457 U.S. 957, 962-63 (1982).  When, however, the group classification rests on grounds wholly irrelevant to the achievement of the State's objective, the Equal Protection Clause comes into play.  See McGowan v. Maryland, 366 U.S. at 425-6 (citing Kotch v. Board of River Port Pilot Com'rs, 330 U.S. 552 (1947); Metropolitan Casualty Ins. Co. of New York v. Brownell, 294 U.S. 580 (1935); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61 (1911); Atchison, T. & S.F.R. Co. v. Matthews, 174 U.S. 96 (1899)).

"When deciding whether a state election law violates . . . Fourteenth Amendment . . . rights, the Court must weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary."  Timmons v. Twin Cities Area New Party, 520

-9-

U.S. 351, 359 (1997)(citing Burdick v. Takushi, 504 U.S. 428, 434 (1992)). If a regulation imposes "severe burdens on plaintiffs' rights[, it] must be narrowly tailored and advance a compelling state interest." Timmons v. Twin Cities Area New Party, 520 U.S. at 359. The lesser the burden, the less strict review. See id. For example, the courts use a stricter standard for determining a violation of equal protection when the decision is based on racial classifications. "Racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations." Washington v. Davis, 426 US 229, 242 (1976)(citing McLaughlin v. Florida, 379 U.S. 184 (1964)). "Under the minimum level of scrutiny, equal protection is offended only if the statute's classification 'rests on grounds wholly irrelevant to the achievement of the State's objective.'" Snead v. City of Albuquerque, 663 F. Supp. 1084, 1088 (D.N.M. 1987)(citing McGowan v. Maryland, 366 U.S. at 425-26). "[T]o implicate the higher standard of review on the basis of a "fundamental right" requires that the right be guaranteed by the Constitution." Snead v. City of Albuquerque, 663 F. Supp. at 1087.

Generally, with regard to voting, the Equal Protection Clause does not warrant strict scrutiny but does warrant more than minimum scrutiny.[6] "The Equal Protection Clause confers the substantive right to participate on an equal basis with other qualified voters whenever the State has adopted an electoral process for determining who will represent any segment of the States population." Lubin v. Panish, 415 U.S. 709, 714 (1974) (citing Reynolds v. Sims, 377 U.S. 533 (1964); Kramer v. Union School District, 395 U.S. 621 (1969); Dunn v. Blumstein, 405 U.S. 330

[6] The standard is different when wealth or economic status are considered factors in ballot access. In that event, the restrictions must be "closely scrutinized" for their reasonable need in accomplishing a legitimate state objective. See O'Connor v. Nevada, 27 F.3d 357, 360 (9th Cir. 1994) (citing Bullock v. Carter, 405 U.S. 134, 144 (1972). Economic status cannot be a element by which to measure a potential candidate qualification to hold office. See id. (citing Clements v. Fashing, 457 U.S. 957, 964 (1982)).

(1972); San Antonio School District v. Rodrgiuez, 411 U.S. 1 (1973)).  The right to vote is intertwined with the right to be a candidate. See Lubin v. Panish, 415 U.S. at 714.  Important is the "nature of the interests that are affected and the extent of the burden those provisions place on candidacy."  See O'Connor v. Nevada, 27 F.3d 357, 361 (9th Cir. 1994)(citing Clements v. Fashing, 457 U.S. at 967-968).  "[T]he criterion for differing treatment must bear some relevance to the object of the legislation." Bullock v. Carter, 405 U.S. 134, 145 (1972)(citing Morey v. Doud, 354 U.S. 457 (1957); Smith v. Cahoon, 283 U.S. 553, 567 (1931).  However slight the burden by a state law upon a political party, voter, or class of voters,  it must nevertheless be "justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'"  Crawford v. Marion County Election Board, 128 S. Ct.  1610, 1616 (2008)(citing Norman v. Reed, 502 U.S. 279, 288-289 (1992)).  The "legitimate state interest . . . must be achieved by a means that does not unfairly or unnecessarily burden either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity."  Lubin v. Panish, 415 U.S. at 716.

"In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." Clements v. Fashing, 457 U.S. 957, 963 (1982)(citing Bullock v. Carter, 405 U.S. 134, 143 (1972)).  "Decision in [the] area of [Equal Protection] is a matter of degree, and involves a consideration of the facts and circumstances behind the law, the interests the State seeks to protect by placing restrictions on candidacy, and the nature of the interest of those who may be burdened by the restrictions."  Id. (citing Storer v. Brown, 415 U.S. 724, 730 (1974); Williams v. Rhode, 393 U.S. 23, 30 (1968)).  "Classification is the essence of all legislation, and only those classifications which are invidious, arbitrary and irrational offend the Equal Protection Clause of the Constitution." Id. (citing Williamson v. Lee Optical Co., 348 U.S. 483, 489 (1955)).

The Equal Protection Clause prohibits a state from inflicting a poll tax, or other fees, upon

a voter as a qualification to vote.  See Harper v. Virginia State Bd. of Elections, 383 U.S. 667, 667-69 (1966).  A voter's wealth is irrelevant to his qualification to vote.  See id. at 667.  Similarly, a candidate's wealth is irrelevant to his qualification to be placed on the ballot.  See Lubin v. Panish, 415 U.S. at 718.  There are limitations to what is considered a tax or fee, however.  The requirement that a candidate for office be a licensed attorney who in turn is required to pay membership dues to the bar,[7] is not, in effect, requiring that candidate to pay a filing fee to be a candidate.  See O'Connor v. Nevada, 27 F.3d at 361.  It is not the payment of the membership dues to the bar, but the legal knowledge that comes with being a licensed attorney that is the qualifying factor.  See id.

## ANALYSIS

Gould's Complaint requests that the Court decertify the 2008 District Attorney election as a remedy for the alleged statutory and constitutional errors infecting the election.  Because of the relief that he seeks, Gould's claims are not moot despite the 2008 election being over.  Turning to the merits, the Court nonetheless finds that Gould's claims should be dismissed, because they fail to state any claims on which relief can be granted.

## I.       GOULD'S CLAIMS ARE NOT MOOT.

Herrera asserts that the Court should dismiss Gould's Complaint because the Court lacks subject-matter jurisdiction to hear the matter because the matter is moot; the election has already occurred.  She is correct; the election is over.  Gould cannot be the current District Attorney in the First Judicial District of New Mexico -- at least not if the current election results stand.  Gould, however, believes he has a way around this problem.  While his Complaint is not the model of

_____

[7] It is not unconstitutional for a state to condition the right of its attorneys to practice law upon the payment to it of membership dues.  See O'Connor v. Nevada, 27 F.3d at 361 (citing Lathrop v. Donohue, 367 U.S. 820, 843 (1961)).

clarity, liberally construed, the Complaint asks that, as a result of violations of federal and constitutional law, the Court decertify the results of the 2008 election and order a new, special election in which he could participate and run for the office of District Attorney.

Gould seeks "Federal intervention" and "with purpose to seek a declaratory judgement certifying the propriety of the candidacy," but he also asks that the Court "dissolve and nullify the restrictions to the general election ( 'or special election in timely fashion') which may include candidate Eliot P. Gould and others and other relief as may be just." Complaint at 12. This last request is somewhat cryptic, but it can be read as asking the Court to decertify the 2008 election and order a new election held. At the hearing, Gould clarified that his requests to the Court to involve: (i) to declare the removal of the name Eliot P. Gould from the June 2008 ballots improper; (ii) to direct the Secretary of State to decertify the results of the primary results; and (iii) to direct a new, special election to occur on June 15 or July 8 of 2009. See Transcript of Hearing at 55:17-58:11 (taken March 20, 2009)(Court & Gould).[8]  Gould has a legally cognizable interest in the decertification of the 2008 election results and the occurrence of a new election. This claim is not based on an event that is absolute. To determine that it has jurisdiction, the Court need not decide whether the Court could grant this drastic relief.[9] It is sufficient that Gould has pled a claim for such

_____

[8] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain different page and/or line numbers.

[9] Gould contends that New Mexico's Election Code would allow the Court to decertify the election results and order a new election. It is unclear to what provisions of the Election Code Gould refers. New Mexico allows contests to a candidate's successful election, see N.M.S.A. 1978 § 1-14-1, which is "much broader remedy" than ballot recounting, Weldon v. Sanders, 99 N.M. 160, 163, 655 P.2d 1004, 1007 (1982). Although the Court need not decide whether New Mexico law would allow for the relief Gould seeks, voiding an election is not an uncommon remedy in the right circumstances. See 29 C.J.S. Elections § 518 (2008)(discussing when courts have declared elections void).

relief.  The Court could, in theory, grant the remedy requested by Gould.  Mootness is not a problem here.

## II.   FEDERAL COURTS ARE BOUND BY A STATE'S INTERPRETATION OF ITS LAWS UNLESS IT VIOLATES THE RIGHTS GRANTED UNDER THE U.S. <u>CONSTITUTION OR FEDERAL LAW</u>.

Herrera also asserts that Gould should not be permitted to run for the office of District Attorney because "he is not constitutionally qualified to hold that office."[10]  Doc. 15 at 3.  Herrera's reference to the constitution refers to the New Mexico Constitution and not to the United States Constitution.  To the extent that Gould requests that the Court certify his candidacy for the office of District Attorney, the Court cannot set aside New Mexico law, unless it conflicts with federal law.  The New Mexico Constitution, as the Supreme Court of New Mexico has interpreted it, requires that district attorneys be admitted to practice law.

The New Mexico First Judicial District Court, in hearing the challenge against the candidacy of Gould, held that, although Gould was learned in the law, he was not qualified to be District Attorney because he was not a licensed attorney.  Gould  argued in his Complaint that, by making the holding that he was learned in the law but still was not qualified because he was not licensed as an attorney, the Court was, in essence, amending the New Mexico Constitution and adding an additional requirement for candidacy of District Attorney.  <u>See</u> Complaint at 13.  Gould avers that "the state District Court decision disintegrates, disenfranchises and unduly burdens the representative minority of the population from equal ballot access."  <u>Id.</u> ¶ 12, at 10.   Gould acknowledges that, despite the holding of the First Judicial District Court that he is learned in the

----

[10] There is no question present concerning compliance with the law in the nominating process, timeliness of the filing of the certificates of nomination, or relative to the sufficiency of the certificates.

law, the Supreme Court of New Mexico has held that "learned in the law" is synonymous with "licensed attorney." Id. at 15. See Chavez v. Evans, 79 N.M. at 584, 446 P.2d at 451. Gould contends that the Supreme Court of New Mexico, by establishing that holding, was also, in effect adding an additional qualification to the state constitution. See Complaint at 15.[11] Plaintiff further contends that such holding results in "invidious discrimination – a classification which is arbitrary, irrational and not reasonably related to a legitimate purpose" Doc. 1 at 15.

        The Supreme Court of New Mexico is tasked with interpreting the law and statutes, including the Constitution of the State of New Mexico. An interpretation does not automatically equate to an amendment of the state Constitution. Apparently, by no person other than Gould has it been stated that the interpretation, at issue, was an amendment to the New Mexico Constitution. The federal courts are not free to impose upon New Mexico the Court's interpretation of the New Mexico Constitution. See, e.g., TMJ Implants, Inc. v. Aetna, Inc., 498 F.3d 1175 (10th Cir. 2007)("A federal court must follow the state's highest court in pronouncing or construing the state's common law, statutory law, or constitutional law."). This federal Court does not have the power to challenge a state's interpretation of its own laws. The federal government is bound to respect the interpretation of state law made by the state courts unless it contravenes federal law, including the United States Constitution. The Court cannot, even if it thought it proper, contradict the Supreme Court of New Mexico and rule that the New Mexico Constitution does not require a candidate for District Attorney to be licensed to practice law.

        No relief is available to Gould on his claim for certification. The Court does not have the authority to "certify the propriety of a candidacy." He appears to be requesting certification as

---

[11] Gould also asserts that the Supreme Court decision is inaccurate. See Complaint ¶ 8, at 3.

federal court relief for the misinterpretation of state law.  The Court's jurisdiction on this matter is limited to infringements of federal law and the Constitution of the United States.  The Court will dismiss Gould's request to certify his propriety for candidacy.

Gould has asserted violations of his rights under the Voting Rights Act and the Equal Protection Clause of the United States Constitution, Amendment XIV.  The Court has jurisdiction pursuant to 28 U.S.C.A. §§ 1343(a)(3) & (4).  While Herrera, in her motion to dismiss, did not fully expound upon these constitutional and federal law issues, she articulated well the rationale behind the federal law basis of her motion to dismiss at the hearing.  See Tr. at 5:21-6:12 (Jackson).

### III.   THE REQUIREMENT THAT A CANDIDATE FOR NEW MEXICO DISTRICT ATTORNEY BE LICENSED TO PRACTICE LAW DOES NOT VIOLATE THE VOTING RIGHTS ACT.

Gould asserts that the requirement by the First Judicial District Court that he be licensed as an attorney, in addition to being "learned in the law," to be District Attorney violated his rights under the Voting Rights Act.[12]  Gould argues that the requirement that a candidate for the role of District Attorney be licensed to practice law in New Mexico equates to a hybrid poll tax/test and device in violation of the Act.

Gould acknowledges that the original intent of the Voters Right Act of 1965 was to combat voting discrimination against a protect class or minority, such as race and language minorities.  See Complaint at 14.  Gould appears to argue that two minorities are being deprived their voting rights: (i) the "the majority of the nearly 950 signatures (by axiom a minority of the First District population) [which were] denied their opportunity to elect their choice," id.; and (2) Gould, because

_____

[12] The holding of the Supreme Court of New Mexico, in Chavez v. Evans, which states that learned in the law and licensed to practice law are the same, see 79 N.M. at 584, 446 P.2d at 451, governs over the lower state court decision.

he was the only person who filed for the office of First Judicial District Attorney whose ballot was stricken, see id.  Gould contends that he was not stricken for "a requirement explicit in the election code," but because of an arbitrary holding by the state court.  Id. at 16.

The Voting Rights Act was enacted to combat discrimination against a protected class or minority, such as race or language minorities in voting.  See Morse v. Republican Party of Virginia, 517 U.S. at 193; 42 U.S.C. § 1973 (race) and § 1973b(f)(2) (language minorities).  Gould is asserting a right to candidacy, not that his right to vote has been abridged.  Even if the Voting Rights Act could be construed to apply -- for instance on the basis of allowing voters to cast their votes for the candidate of their choice[13] -- the minority groups to which Gould refers are not minority groups which the Voting Rights Act was intended to protect or which the Act, by its language, protects. Gould is not being denied a vote on account of race or color, or because he is a member of a language minority group, nor does he assert that he is being denied a vote on these bases.  There is no indication that the interpretation that being "learned in law" is equivalent to being licensed to practice law in the State of New Mexico has potential to discriminate against these suspect classes. Arguably, the spirit that animated the passage of the Voting Rights Act might apply to such a situation, as Gould argued at the hearing.  Spirit cannot substitute for language, however, when it comes to applying the law.  The Voting Rights Act is inapplicable to a case such as the one Gould brings here.  Congress might, though that is far from certain, have the power to pass a law that would prohibit states from requiring candidates for district attorney to be licensed to practice in the

---

[13]  As Lubin v. Panish noted in the context of equal protection: "The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters." 415 U.S. at 716.

state.  Congress has not done so.  Accordingly, the Court will dismiss Gould's claim under the Voting Rights Act.

IV.    **THE REQUIREMENT THAT A CANDIDATE FOR NEW MEXICO DISTRICT ATTORNEY BE LICENSED TO PRACTICE LAW DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE.**

Gould also asserts that requiring the First Judicial District Attorney to be licensed to practice law is an arbitrary standard that violates the Equal Protection Clause of the Fourteenth Amendment. In his Complaint, Gould appears to argue that two types of minorities were deprived of their voting rights: (i) the "the majority of the nearly 950 signatures (by axiom a minority of the First District population) [who were] denied their opportunity to elect their choice," Complaint at 14; and (ii) Gould, because he was the only person who filed for the office of First Judicial District Attorney whose ballot was stricken, see id. at 16.  Although Gould asserts that invidious discrimination has occurred, he does not allege that the interpretation of the New Mexico law invidiously discriminates against a suspect class.  Nor is the right to candidacy a fundamental right.  See Clements v. Fashing, 457 U.S. at 963.  Accordingly, the Court will not employ strict scrutiny when analyzing whether the Equal Protection Clause precludes New Mexico's requirements for district attorneys.  Instead, the Court considers a less strict review: whether the state action is "justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'"  Crawford v. Marion County Election Board, 128 S. Ct. at 1616 (citing Norman v. Reed, 502 U.S. at 288-89).

The Court analyzes Gould's argument based upon the discrimination affecting him (and other  potential candidates for the District Attorney position who are not New Mexico licensed attorneys).  Gould wants to be a candidate for the position of District Attorney of the First Judicial District.  Gould recognizes that the District Attorney is the "chief legal officer" of the district.  The office wields considerable authority.  The District Attorney must be able to appear before the New

Mexico courts, as he is involved with criminal and civil cases within his District.  The District Attorney must be able to provide proper legal advice, most often with regard to New Mexico law. He further must be able to direct the personnel within his office as to how to handle legal matters in New Mexico.  The District Attorney must be appropriately qualified to perform the duties.  The Court cannot reasonably find that requiring the District Attorney to be licensed as a attorney is an irrelevant precondition to holding that office, particularly wherein there is a requirement that an attorney be licensed to practice in front of the state courts.  See N.M.S.A. 1978 § 36-2-27.  The requirements of the New Mexico Constitution, as interpreted by the Supreme Court of New Mexico in Chavez v. Evans, that the candidate for District Attorney be licensed as an attorney as the indicator that he is learned in law does not violate the Equal Protection Clause of the United States Constitution.

The requirements the New Mexico Constitution imposes on candidates are similar to the requirements that have been upheld in other cases.  In O'Connor v. Nevada, the United States Court of Appeals for the Ninth Circuit found that a Nevada law requiring candidates for the Nevada Supreme Court to be licensed to practice law in Nevada did not violate the Equal Protection Clause. See O'Connor v. Nevada, 27 F.3d at 361.  There is little relevant difference between requiring elected judges to be licensed than in requiring elected district attorneys to be licensed.

Additionally, the requirement that Gould, and any other potential candidate for that office, be required to be a licensed attorney, which licensure requires a membership in the State Bar and payment of bar dues, is not equal to a poll tax.  It is the legal knowledge that is being required by the restriction; it is not the payment of the dues.  By similar analogy, the requirement by the State Bar that a person must pass a bar exam to become a licensed attorney is not an unconstitutional test or device.  Again, it is the legal knowledge that is being required by the State, not the taking of a

-19-

test.  The payment of dues and the taking of the bar examination are corollaries to the practice of law, not to candidacy.  See id. at 361-62.

On the basis of Mr. Gould's Complaint, the Court cannot conclude that the statute imposes "excessively burdensome requirements" on any class of voters.  The restriction that a candidate for the office of District Attorney be a licensed New Mexico attorney is relevant to a sufficiently justified and legitimate state interest.  The Court will dismiss Gould's Equal Protection Clause claim.

The Court finds that the relevant provisions of the New Mexico Constitution as interpreted by the New Mexico Supreme Court are constitutionally justified.  Gould's rights under the Voting Rights Act and under the Equal Protection Clause of the United States Constitution have not been violated.  Even assuming all alleged facts are true, Mr. Gould's claim cannot legally stand.  Further, the Court cannot identify, and Gould does not suggest, any amendments that would cure the problems with his Complaint; his problems are fundamental and not technical.[14]  Accordingly, the Court concludes that it would be futile to allow Gould an opportunity to amend his complaint.  The Court will dismiss the Complaint.

**IT IS ORDERED** that Defendant Mary Herrera's Motion to Dismiss is granted;  Plaintiff's Complaint is dismissed for failure to state a claim upon which relief can be granted.

---

[14] The Court also notes that Gould has not requested leave to amend in th event of a dismissal.

UNITED STATES DISTRICT JUDGE

*Parties and Counsel*:

Eliot Paul Gould
Santa Fe, New Mexico

      *Plaintiff pro se*

Gary King
  Attorney General of New Mexico
Scott Fuqua
Matthew Jackson
  Assistant Attorneys General
Santa Fe, New Mexico

      *Attorneys for Gary King, Patrick McCauliffe, Defendant Mary Herrera, Secretary of State,*
         *Kelli Fulgenzi, The Honorable Daniel Sanchez, and The Honorable James A. Hall*

Luis E. Robles
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant Governor Bill Richardson, The Honorable Edward L. Chavez,*
        *and Kathleen Jo Gibson*

Joseph Campbell
Santa Fe, New Mexico

      *Defendant pro se*